# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MMAS RESEARCH LLC, a Washington limited liability company,<br><br>Plaintiff<br><br>v.<br><br>NEW YORK UNIVERSITY; PFIZER INC.; ICAHN SCHOOL OF MEDICINE AT MOUNT SINAI; VALENTIN FUSTER, DOES 1 through 10, inclusive,<br><br>Defendants. | Civil Action No. 1:25-7026<br>**AMENDED COMPLAINT FOR BREACH OF CONTRACT; COPYRIGHT INFRINGEMENT; AND THEFT OF TRADE SECRETS.**<br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff MMAS RESEARCH LLC ("MMAS Research," or "Plaintiff") for its claims for relief against Defendants New York University ("NYU"), Pfizer Inc. ("Pfizer"), Icahn School of Medicine at Mount Sinai ("Mt. Sinai"), Valentin Fuster ("Fuster") and DOES 1 through 10, inclusive ("Doe Defendants") (collectively herein "Defendants"), alleges as follows:

## <u>NATURE OF THE ACTION</u>

1. MMAS Research LLC is a well-established company specializing in providing medication software. On December 3, 2019, MMAS Research filed a Copyright Application and was granted a Registration for the MMAS Research Widget Code. The MMAS Research Widget Code is a diagnostic assessment

1

computer program designed to measure and identify medication taking behaviors. It incorporates the MMAS-4 and MMAS-8 Adherence Scales. MMAS Research has extensively licensed its Copyright Registration to universities, pharmaceutical companies, and hospitals worldwide.

2.    It has come to MMAS Research's attention that Defendants NYU; Pfizer; Mt. Sinai, and Fuster have participated in studies and/or authored articles using the MMAS-4 and MMAS-8, resulting in Pfizer's and NYU's breach of its license and in Defendants' infringement of MMAS Research's Copyright, as well as the misappropriation of MMAS Research's trade secrets.

3.    Accordingly, MMAS Research has commenced this action for: (a) Breach of Contract; (b) Copyright Infringement Pursuant to 17 U.S.C. § 501; and (c) Misappropriation of Trade Secrets under the Defend Trade Secrets Act (DTSA) and New York's common law for trade secrets.

## THE PARTIES

4.    Plaintiff, MMAS RESEARCH LLC is a Washington limited liability company in good standing.

5.    Plaintiff is the owner of the "MMAS RESEARCH WIDGET CODE" (the "Morisky Widget"), registered under United States Copyright Registration No. TX 8-816-517 (Registration date December 3, 2019) (the "Morisky Widget Copyright"). A true and correct copy of Copyright Registration TX 8-816-517, entitled "MMAS Research Widget Code," is attached as Exhibit 16.

6.    On information and belief, Defendant New York University ("NYU") is a Not-for-Profit research university is located at 726 Broadway, 10th Floor, New York, NY 10003.

7.    On information and belief, Defendant Pfizer Inc. ("Pfizer"), a Delaware Corporation, is located at 66 Hudson Boulevard East, New York, NY 10001-2192.

2

8. On information and belief, Defendant Icahn School of Medicine at Mount Sinai ("Mt. Sinai") is a Not-for-Profit organization located at 1 Gustave L. Levy Pl, New York, NY 10029.

9. On information and belief, Defendant Valentin Fuster ("Fuster") is an individual, with a work address at 1190 5th Ave, New York, NY 10029.

10. Plaintiff is informed and believes and thereon alleges that Defendants DOES 1 through 10, inclusive (the "Doe Defendants," and collectively with the above-named defendants, the "Defendants"), are other parties not yet identified are the subject of this lawsuit. The true names, whether corporate, individual, or otherwise, of DOES 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues defendants by such fictitious names, and will seek leave to further amend this complaint to show their true names and capacities when their identities have been determined.

11. Plaintiff is informed, believes, and thereupon alleges that Doe Defendants were, and are, in some manner responsible for the actions, acts, and omissions alleged, and for the damage caused by Defendants and are, therefore, liable for the damage caused to Plaintiff.

12. Plaintiff is informed, believes, and thereon alleges that Defendants did, at all material times, foresee the nature and extent of the probable consequences of their acts in proximately causing said damage to Plaintiff.

13. Plaintiff is informed, believes, and thereon alleges that, at all relevant times, Defendants controlled and participated in the acts or conducted allegedly herein.

## JURISDICTION AND VENUE

14. This action arises, in part, under the 17 U.S.C. § 501 – Infringement of Copyright including all sections created or amended by the Digital Millennium Copyright Act conferring federal question jurisdiction under 17 U.S.C. § 101 and 28

3

U.S.C. §1338, and supplemental jurisdiction on Plaintiff's state law claims under 28 U.S.C. § 1367.

15. This action arises, in part, under the Defend Trade Secrets Act ("DTSA") 18 U.S.C. § 1836 including all sections created or amended by the DTSA, conferring federal question jurisdiction under U.S.C. § 1836.

16. Additionally, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.00 and there is a complete diversity of citizenship between the Parties.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; (b) the unlawful acts of Defendants complained of herein have been committed within this District and have, had, or will have had effect in this District; (c) the written agreements identified and described more thoroughly below were entered into by the Parties in this District; and (d) the written agreements identified and described more thoroughly below, by their terms, stipulated to jurisdiction and venue in this District.

18. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because one or more Defendants are amenable to personal jurisdiction in this District.

<u>**FACTUAL ALLEGATIONS**</u>

I.   **THE MORISKY WIDGET**

**Background On the Morisky Widget and Ownership**

19. On information and belief, in December 2016, Donald Morisky moved his California LLC, MMAS Research to the State of Washington to establish MMAS Research LLC which was equally co-owned, 50%/50% by Donald Morisky and Plaintiff.

4

20.    On information and belief, the new Washington LLC was formed to develop a derivative of Morisky's original works, the Morisky Medication Adherence Scales, MMAS-8 and the MMAS-4.

21.    On information and belief, Donald Morisky, and Plaintiff, the equal co-owners of MMAS Research LLC of Washington jointly created the new work, the Morisky Widget. A true and correct copy of email correspondence between Dustin Machi, Donald Morisky, and Steven Trubow is attached as Exhibit 1.

22.    On information and belief, Section 201(a) of the United States Copyright Act established co-ownership of copyright in the joint work, the Morisky Widget. Under this provision, Morisky and Plaintiff had an undivided interest in the Morisky Widget, each having the right to license non-exclusive uses of the Morisky Widget and to transfer their individual ownership interests. *See* 17 U.S. C § 201(a).

23.    On information and belief, under New York State Common Law and statutory framework, Plaintiff has lawful possession of the Morisky Widget, MMAS-8 and MMAS-4 trade secrets.

24.    On information and belief, under the Defend Trade Secrets Act and New York State Common Law and statutory framework, Plaintiff has standing to sue Defendants for misappropriation of the Morisky Widget, MMAS-8 and MMAS-4 trade secrets.

25.    On June 21, 2019, Donald Morisky emailed Plaintiff's CEO, Steven Trubow, with the Subject "Accept your offer of withdrawal." Morisky wrote:

"Steve: After consideration, I have decided to accept the offer of withdrawal as a member contained in the February 14, 2019 e-mail from you to me. I have attached below a copy for your convenience. The offer "If you want to withdraw from MMAS Research LLC you are free to do so, but you will give up your 50% ownership in the Morisky Widget" is accepted. I hereby withdraw as a member and from all other of my roles

5

on behalf of MMAS Research, LLC, effective June 21, 2019. Thank you."

A true and correct copy of email correspondence between Donald Morisky and Steven Trubow is attached as Exhibit 2.

26. On information and belief, Morisky and Trubow developed the Morisky Widget to correct deficiencies in the original works, the MMAS-4 and the MMAS-8 that made the two diagnostic assessments unreliable to accurately measure the medication adherence of patients with chronic and infectious diseases.

27. On information and belief, The Morisky Widget greatly improved the specificity and sensitivity of the original MMAS 8/4 so that patients who took the tests were not put at risk for adverse medical events or even death.

28. On information and belief, from January 1, 2017, until June 21, 2019, Morisky informed all prospective new licensees and past licensees of the original MMAS 8/4 that beginning January 1, 2017, all MMAS-8 and MMAS-4 licenses are administered through the Morisky Widget. Another HUGE ADVANTAGE of the Morisky Widget is to select from 110 MMAS condition (and medication) specific tests which offer a sensitivity (true positive) of 93%. A true and correct copy of email correspondence between Donald Morisky and Thejus Thomas is attached as Exhibit 3.

29. In April 2021, in a letter to the editor of the Journal of Clinical Hypertension, which published the validation article for the MMAS-8 in 2008, Ortiz wrote "the MMAS-8 scores may be no more accurate in detecting patients with uncontrolled BP, than tossing a coin to decide." A true and correct copy of the Letter to the Editor, received on April 2, 2021 and accepted on April 26, 2021, is attached as Exhibit 4.

30. In September 2023, The Journal of Clinical Hypertension published a notice retracting Morisky's 2008 MMAS-8 validation article from the medical

literature due to misleading sensitivity and specificity values in the medication adherence scale and a lack of confidence in the study's conclusions. A true and correct copy of the Notification from The Journal of Clinical Hypertension is attached as Exhibit 5.

31.    On April 21, 2022, a letter from Dr. Donald Morisky's lawyer, Christopher Austin, was broadcast worldwide to anyone with access to the internet and sent by email to over 200 Morisky Widget licensees. Austin wrote:

> "Further, the MMAS Research copyright in the Morisky Widget code is an unlawfully obtained derivative of Dr. Morisky's MMAS-4 and MMAS-8 registered copyrights (as noted by the U.S. Copyright Office's reference to Dr Morisky's registered copyrights on the Morisky Widget registration). As such, neither Trubow nor MMAS Research has any right to use or license the Morisky Widget copyright, **which includes use or licensure of the Morisky Widget program**.
>
> ANY PERSON THAT USES OR LICENSES THE <u>MORISKY WIDGET, MMAS-4 SCALE OR MMAS-8 SCALE</u> WITHOUT THE EXPRESS WRITTEN AUTHORIZATION OF DR. MORISKY WILL BE IN VIOLATION OF U.S. FEDERAL COPYRIGHT LAW FOR COPYRIGHT INFRINGEMENT."

A true and correct copy of the Letter sent by F. Christopher Austin on April 21, 2022, is attached as Exhibit 6.

32.    On March 13, 2024, in Case: 23-55202, the United States Court of Appeals for the Ninth Circuit wrote in a Memorandum:

> "The district court erred in concluding that MMAS [Plaintiff] lacked standing to sue for copyright infringement. The district court found that a 2020 preliminary settlement agreement from a separate lawsuit between MMAS and Dr. Donald Morisky transferred the Morisky

Widget from MMAS to Dr. Morisky. But that the agreement – which simply outlined terms MMAS and Dr. Morisky "desire[d] to consent and agree to" sometime in the future – was never finalized. MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget."

A true and correct copy of the Memorandum dated March 13, 2024, is attached as Exhibit 7.

**The Night and Day Differences Between the MMAS-8, MMAS-4, and the Morisky Widget MMAS-8 And MMAS-4**

33.    The development of the Morisky Widget began when Dr. Donald Morisky, a Public Health Professor at UCLA and Steven Trubow, a former Apple Computer Inc. Software Engineer and United States Department of Defense contractor combined their respective works.

34.    Morisky contributed his paper Morisky Medication Adherence Scales (MMAS) 4&8 and Trubow contributed his predictive analytic risk assessment software.  Both Morisky and Trubow's original works were combined to create the Morisky Widget shown below.



35.    The paper MMAS-4 and MMAS-8 were four and eight static questions that produced a single score of raw medication adherence for a generic health condition. The MMAS-8 score was a single number between 0-8 and the MMAS-4 score was a single number between 0-4.

36.    The Morisky Widget MMAS-8/4 were four and eight dynamic medication and condition specific questions, which produced three scores, one for raw adherence, one for intentional non-adherence and one for unintentional non-adherence as shown above.

37.    The Morisky Widget features a trade secret test editor that allows the user to convert the original MMAS-8/4 static questions that have low specificity and sensitivity to dynamic medication and or condition specific question with much higher specificity and higher sensitivity in near real time in over 80 languages. See the Morisky Widget test editor below.



38.    More importantly there were significant medical differences between the original MMAS-4, MMAS-8 and the Morisky Widget, While the MMAS-4 and MMAS-8 were simply a measure of medication adherence, the Morisky Widget was a diagnostic assessment of medication behaviors that not only measured medication adherence, but more importantly **identified why the patient was not taking their medication and the risk of adverse events to their health.**

9

## II.    PALLAS STUDY

39.    On October 17, 2019, two NYU researchers from the NYU School of Medicine, Antoinette Schoenthaler and Franzenith de la Calle, published an article titled "A Systems-Level Approach to Improving Medication Adherence in Hypertensive Latinos: a Randomized Control Trial."

https://pmc.ncbi.nlm.nih.gov/articles/PMC6957668/

40.    On information and belief, the authors wrote in the acknowledgement of the article that "Morisky Widget™, MMAS™, MMAS4™, MMAS-8™, Morisky Medication Adherence Protocol™, and Morisky Medication Adherence Scale™ content, name, and trademarks are protected by US and International Trademark and Copyright laws. Permission for use of the scale and its coding is required. A license agreement is available from Donald E. Morisky, ScD, ScM, MSPH, 14735 NE 20th St Bellevue, WA 98007, USA; dmorisky@gmail.com or Trubow1@gmail.com."

https://pmc.ncbi.nlm.nih.gov/articles/PMC6957668/

41.    In June 2020, Plaintiff and Defendant NYU executed a settlement agreement that granted NYU and its employees, students, agents, contractors, and representatives a non-exclusive, non-transferable, irrevocable, royalty-free, perpetual license to use the (Morisky) Widget and to administer the MMAS- 4 and the MMAS-8 through the use of the Widget; and code and score the MMAS-4 and MMAS-8 results, including, without limitation, through use of the Widget. Exhibit NYU Perpetual License. A true and correct copy of the Settlement Agreement between NYU and MMAS is attached as Exhibit 8.

42.    Plaintiff traveled to New York City and trained and certified NYU clinicians, researchers and NYU lawyers  on trade secret MMAS-4, MMAS-8 and Morisky Widget scoring and coding criteria.

43.    On October 19th, 2018, Plaintiff trained and certified Jacquelline Montesdeoca of the NYU School of Medicine and Emily Goldman of the NYU

10

College of Global Health on trade secret MMAS-4, MMAS-8 and Morisky Widget scoring and coding criteria.

44.    On March 15, 2019, Plaintiff trained and certified Doi Goldman from NYU Langone Health on trade secret MMAS-4, MMAS-8 and Morisky Widget scoring and coding criteria.

45.    On April 30, 2019, Plaintiff trained and certified Eldon Lee Taylor from the NYU Legal Department, Adebayo Ogunlade and Jocelyn Acosta from NYU Langone Health on trade secret MMAS-4, MMAS-8 and Morisky Widget scoring and coding criteria.

46.    On information and belief, Jocelyn Acosta, from NYU Langone Health, scored and coded 1028 MMAS tests in the Morisky Widget before the NYU perpetual Morisky Widget license was executed in May 2020.

47.    On information and belief, NYU agreed in their perpetual Morisky Widget license, to administer the MMAS- 4 and the MMAS-8 through the use of the Widget; code and score the MMAS-4 and MMAS-8 results, including, without limitation, through use of the Widget. *See* Exhibit 8.

48.    On information and belief, NYU breached its perpetual Morisky Widget License by not scoring and coding the PALLAS Study MMAS-4 tests given after June 2020 in the NYU perpetual Morisky Widget license. *See* Exhibit 8.

49.    On July 4, 2019, Pfizer, a simplified joint-stock company incorporated under French law (SAS), and SAS MMAS Research France, a company duly organized under the laws of France, partially executed a worldwide retroactive and perpetual Morisky Widget license under the laws of France.

50.    On information and belief, under French law parties can sue for breach of contract, even if the license agreement was never formally signed, as long as there is evidence of mutual consent and partial execution. France's contract law is based

11

on the principle of "consensualisme", where a contract is formed by the mere agreement of the parties' wills, not by a specific written form.

51.    On information and belief, Defendant Pfizer agreed in its worldwide retroactive and perpetual Morisky Widget license that coding and scoring criteria of any MMAS assessments are trade secrets of Plaintiff and as such may not be divulged in any publication, presentation, or website without written permission from Plaintiff.  Defendant Pfizer agreed to treat the coding and scoring criteria as confidential trade secrets, as if such information were Pfizer's own confidential trade secrets. A true and correct copy of Pfizer Global Morisky Widget MMAS License is attached as Exhibit 9.

52.    On information and belief, Defendant Pfizer agreed in the Pfizer worldwide retroactive and perpetual Morisky Widget license that with respect to any study commenced after the date of full execution of this Agreement, the MMAS assessments can only be administered through the Morisky Widget. No manual administration of the MMAS Scale with paper and pencil questionnaires will be allowed for studies that begin after the execution of this license. *See* Exhibit 9.

53.    On June 28th, 2019, Tiffany Trunko, a lawyer for Pfizer Inc., sent an email with the subject July 4, MMAS Widget training/Pfizer to Plaintiff's CEO and ccd Paul Llewellyn, Defendant Pfizer's Counsel. Ms. Trunko wrote:

"Dear Mr. Trubow.

This relates to MMAS Widget training and certification on Thursday July 4, 2019, in Paris.

Please provide the names (and organization name for each) for the MMAS personnel who will attend, so that we can arrange entry passes.

Please also confirm the start time (Paris Time) for the 5-hour training. We had been planning to start at 9 am local time.

I will provide the location, address, and contact name details to you on Monday, or latest Tuesday morning.

Regards

Tiffany Trunko,

Pfizer Inc."

A true and correct copy of email correspondence between Tiffany Trunko and Steven Trubow is attached as Exhibit 10.

54.    On July 4, 2019, Plaintiff's CEO and two other MMAS personnel traveled to Paris France and trained and certified Pfizer clinicians on the trade secret MMAS-4, MMAS-8 and Morisky Widget trade secret scoring and coding criteria.

55.    On information and belief, Ms. Trunko witnessed over a web connection the July 4, 2019, Paris training and certification of Pfizer clinicians on the trade secret MMAS-4, MMAS-8 and Morisky Widget scoring and coding criteria from her office or residence in New York.

56.    On information and belief, the PALLAS study is a large, international clinical trial that investigated whether adding the drug palbociclib to standard adjuvant endocrine therapy could improve outcomes for patients with early-stage, hormone-receptor-positive, HER2-negative breast cancer.

57.    In March 2025, author Ernest Law from Pfizer and author Yelena Novik from NYU published a PALLAS Study article entitled "Impact of adding palbociclib on treatment adherence to ongoing adjuvant endocrine treatment in the global randomized PALLAS randomized trial in patients with early breast cancer" (the ""PALLAS Study Article"). A true and correct copy of the article entitled "Impact of adding palbociclib on treatment adherence to ongoing adjuvant endocrine treatment in the global randomized PALLAS randomized trial in patients with early breast cancer" published in 2025 is attached as Exhibit 11.

13

58. On information and belief, Defendants Pfizer and NYU authors wrote "The content is solely the responsibility of the authors." *See* Exhibit 11.

59. On information and belief, in the PALLAS Study Article, authors from Defendants Pfizer and NYU wrote "patients in the ITC PRO population were asked to complete modified MMAS-4 paper questionnaires at study visits for cycles 2, 3, 6, 12, 18 and 24." *See* Exhibit 11.

60. On October 17, 2025, Defendant's NYU Counsel, Jodyann Galvin, wrote a letter to Plaintiff's Counsel, Marc Hankin. Galvin wrote, "NYU participated in the PALLAS study, enrolling only 29 patients who were administered the MMAS-4 between November 2016 through November 2021." *See* Exhibit 8.

61. On information and belief, authors from Defendants Pfizer and NYU wrote in the March 2025 PALLAS Study Article:

> "Regarding patient-reported adherence outcomes (PROs), a subset intention-to-collect (ITC) population was determined by availability of validated language versions for the PROs of interest. Validated translations of the Morisky medication adherence scale-4 item (MMAS-4) were available in English, Spanish, and German; therefore, the ITC population included English-speaking participants in Australia, Ireland, the United Kingdom and the United States (US), Spanish-speaking participants in Mexico and Spain, and German-speaking participants in Austria and Germany."

*See* Exhibit 11.

62. In the March 2025 PALLAS Study Article Defendants Pfizer and NYU authors wrote that they modified the Morisky Medication Adherence Scale 4 (MMAS-4) by adding a fifth question, "*All things considered, did you actually take your* (Palbociclib/ Anti-hormone pill) *exactly as directed by your doctor*?" *See* Exhibit 11.

14

63.     On information and belief, Defendants Pfizer and NYU authors wrote that the modified 5 question MMAS-4 was translated from English into German and Spanish. *See* Exhibit 11.

64.     On information and belief, the addition of a fifth question to the modified MMAS-4 included two different medications, palbociclib and anti-hormone pills that work in distinct ways. *See* Exhibit 11.

65.     On information and belief, in the March 2025 PALLAS Study Article, Defendants Pfizer and NYU authors altered the construct validity of the MMAS-4 by changing the MMAS-4 scoring and coding criteria of four question with scores of 0,1 (low adherence) 2,3 (moderate adherence), 4 (high adherence) to summing the five questions to create a total Morisky composite score, ranging from 0 to 5, with a maximal score of 5 considered "most adherent." *See* Exhibit 11.

66.     On information and belief, in the March 2025 PALLAS Study Article Defendants Pfizer and NYU authors modified the MMAS-4 into a derivative MMAS-5, that radically changed the construct validity of the MMAS-4 scale, rendering any MMAS-4 results invalid. *See* Exhibit 11.

67.     On information and belief, Defendants Pfizer and NYU authors breached their Morisky Widget licenses by divulging and misappropriating trade secret MMAS-4 scoring and coding in the March 2025 PALLAS study article. *See* Exhibit 11.

68.     On information and belief, the MMAS-4 is a static measure of medication adherence for generic health conditions and was NEVER designed to assess adherence to multiple-medication regimens (polypharmacy).

69.     On information and belief, the four questions of the generic MMAS-4 are: 1) Do you ever forget to take your (name of health condition) medicine? 2) Do you ever have problems remembering to take your (name of health condition) medication? 3) When you feel better, do you sometimes stop taking your (name of

15

health condition) medicine? 4) Sometimes if you feel worse when you take your (name of health condition) medicine, do you stop taking it?

**Morisky Medication Adherence Scale (©MMAS-4)**

_____(Please check one box on each line)

|  | Yes | No |
|---|---|---|
| 1. Do you ever forget to take your medication? | ☐ | ☐ |
| 2. Do you ever have problems remembering to take your medication? | ☐ | ☐ |
| 3. When you feel better, do you sometimes stop taking your medication? | ☐ | ☐ |
| 4. Sometimes if you feel worse when you take your medication, do you stop taking it? | ☐ | ☐ |

70.    On information and belief, the MMAS-4 was originally developed with focus groups of patients taking anti-tuberculosis or anti-hypertension medications. While a health condition could be inserted, the MMAS-4 was NEVER USED to capture the complexities of a multiple medication regimen, (polypharmacy). While the MMAS-4 was useful for a generic medication adherence assessment, it lacked the specificity and sensitivity to accurately measure how adherent the patients were to both the palbociclib and the endocrine therapy.

71.    On information and belief, at specific cycles, Defendant NYU's PALLAS study patients completed the modified MMAS-4 (MMAS-5) to assess how adherent they were to both the palbociclib and the endocrine therapy. _See_ Exhibit 8.

72.    On information and belief, Defendants Pfizer and NYU authors concluded that in the PALLAS Study, the addition of palbociclib did not decrease adherence to adjuvant ET. _See_ Exhibit 11.

73.    On information and belief, the use of MMAS-4 scale (later modified to MMAS-5) that was never intended to measure polypharmacy adherence makes the conclusion of Defendant Pfizer and NYU authors that the addition of palbociclib did not decrease adherence to adjuvant ET raises questions on the validity of the PALLAS Study conclusions.

16

74. On information and belief, the PALLAS study observed 176 deaths among patients during the study period. There were 100 deaths (3.5%) in the group receiving palbociclib plus endocrine therapy and 76 deaths (2.6%) in the group receiving endocrine therapy alone.

75. On information and belief, 92% of PALLAS study patients on palbociclib and 89.7% on endocrine therapy alone experienced at least one adverse event. Of these, serious adverse events were reported in 13% of the palbociclib group and 7.9% of the control group. The most common adverse events.

76. On information and belief, Defendants Pfizer and NYU authors reported that medication non-adherence was a significant issue and likely contributed to adverse events including early death.

77. On information and belief, the higher adverse events and death rates among patients in the group receiving palbociclib plus endocrine therapy and the adverse events and death rates in the group receiving endocrine therapy alone might be attributed by the failure of the modified MMAS-5 to accurately measure polypharmacy medication non-adherence.

78. On information and belief, Defendants Pfizer and NYU had a professional duty to provide a measure of medication adherence that met an established standard of care.

79. This duty extended to administering the most accurate measures of polypharmacy medication adherence for the patient's care, especially when some of the PALLAS patients were undergoing chemotherapy based on a polypharmacy medication regimen.

80. On information and belief, Defendants Pfizer and NYU breached their Morisky Widget licenses and their professional duty of care by administering the MMAS-4 plus a single polypharmacy question which lacked the construct validity,

17

specificity and sensitivity to accurately measure medication adherence for patients on a polypharmacy medication regimen.

81.    Defendants Pfizer and NYU modifications to the MMAS-4 had a cascading effect on what was actually measured and how reliably it performed to measure adherence to polypharmacy medications on PALLAS Study breast cancer patients.

## III.    SECURE STUDY

82.    On information and belief, in the SECURE study, the MMAS-8 was used to assess medication adherence to a single polypill which combined blood pressure and cholesterol medications.  The MMAS-8 was administered at baseline, 12 months, and 48 months. If a participant scored poorly on the MMAS-8 study personnel intervened to address the barriers preventing optimal adherence. A true and correct copy of the article entitled "Polypill Strategy in Secondary Cardiovascular Prevention" published in 2022, is attached as Exhibit 12.

83.    On information and belief, Defendant Fuster was the co-director of the **SECURE** (Stable on Exercise and Coronary Events) **Study,** which investigated the effectiveness of a "polypill" for preventing secondary cardiovascular events.  His role included overseeing the research that demonstrated the polypill significantly reduced the risk of death or non-fatal cardiovascular events in patients who had already suffered a heart attack.

84.    On information and belief, Defendant Fuster serves simultaneously as the Physician-in-Chief and Director of Mount Sinai Heart at Mount Sinai Health System in New York and as the General Director of the National Center for Cardiovascular Research (CNIC) in Spain. He also serves as the President of Mount Sinai Heart.

85.    On information and belief, on November 6, 2020, Plaintiff and Defendant Fuster's CNIC organization executed a retroactive and corrective

Morisky Widget License Agreement to retroactively re-score and re-code the SECURE study tests in the Morisky Widget. A true and correct copy of Centro Nacional de Investigaciones Cardiovascular Carlos III (CNIC) and MMAS retroactive and corrective License Agreement is attached as Exhibit 13.

86.    On information and belief, CNIC agreed to pay Licensor a one-time, lump-sum fee of five thousand euros for a perpetual European retroactive and corrective MMAS Widget License which includes 6500 retroactive MMAS-8 tests for the SECURE study that is promoted by the CNIC. *See* Exhibit 13

87.    On information and belief, Plaintiff and CNIC agreed that the retroactive re-scoring and re-coding of MMAS-8 SECURE Study tests occurs in the Morisky Widget. *See* Exhibit 13.

88.    On information and belief, CNIC acknowledged and agrees that Licensor's MMAS Widget Coding and Scoring criteria are trade secrets of Plaintiff and, as such, CNIC is forbidden from publicizing MMAS Coding and Scoring criteria in any form without the expressed, written consent from Licensor. *See* Exhibit 13.

89.    On information and belief, the reason it was necessary to retroactively re-score and re-code thousands of SECURE study MMAS-8 tests in the Morisky Widget was because Plaintiff had learned on September 25, 2019 that Defendant Fuster had published a SECURE study protocol on the ClinicalTrial.gov website that reported it was necessary to correct the incorrect scoring of MMAS-8's question 5 and 8 as well as the coding for adherence for the MMAS-8 tests. *See* below. A true and correct copy of CNIC's Clinical Study Protocol dated 2019 is attached as Exhibit 14.

19

| Adherence | Score |
|---|---|
| High adherence | 8 |
| Medium adherence | 6-7 |
| Low adherence | 0-5 |

*Each response carries a score: yes=0 and no=1, except for question 5, where yes=1 and no=0; and question 8, where never/rarely= 1, once in a while= 0.75, sometimes= 0.50, usually= 0.25, all the time= 0.*

90.    On information and belief Defendant Fuster had published the original SECURE study protocol on December 14, 2015. In sharp contrast to the 2019 Secure study protocol which changed the scoring for MMAS-8 questions 5 and 8 and the coding for adherence, the 2015 Secure study protocol shown below scored MMAS-8 questions 1-8 the same, "each response carries a score yes=0 and no=1, except for the last question: never=1, almost never, sometimes, often, always=zero. The coding of high adherence score of 0, medium adherence of 1-2, and low adherence 3-8. A true and correct copy of CNIC's Clinical Study Protocol dated 2015 is attached as Exhibit 15.

| Adherence | Score |
|---|---|
| High adherence | 0 |
| Medium adherence | 1-2 |
| Low adherence | 3-8 |

*Each response carries a score: yes=0 and no=1, except for the last question: never=1, almost never, sometimes, often, always=0.*

91.    On information and belief, even with the 2019 correction of MMAS-8 coding for non-adherence, the coding for medium adherence 6-7 was still incorrect. The correct MMAS-8 coding for medium adherence is greater than 6 and less than 8.

92.    On information belief, Fuster's 2015 SECURE MMAS-8 scoring and coding criteria to measure polypill adherence for SECURE Study patients were

statistically impossible and counterfeit and would have invalidated the 5000 MMAS-8 tests given to SECURE patients. *See* Exhibit 15

93.    On information and belief, an August 26 Press Release from Defendant Mount Sinai's website, reported a three-drug medication known as a "polypill," developed by the Spanish National Center for Cardiovascular Research (CNIC) and Ferrer, is effective in preventing secondary adverse cardiovascular events in people who have previously had a heart attack, reducing cardiovascular mortality by 33 percent in this patient population.  These are findings from the SECURE trial led by Valentin Fuster, MD, PhD, Director of Mount Sinai Heart and Physician-in-Chief of The Mount Sinai Hospital, and General Director of CNIC.

https://www.mountsinai.org/about/newsroom/2022/polypill-reduces-cardiovascular-mortality-by-thirty-three-percent-in-patients-treated-after-a-heart-attack

94.    On August 26, 2022, Defendants Mt. Sinai and Fuster among other authors published an article on the SECURE STUDY entitled *Polypill Strategy in Secondary Cardiovascular Prevention* in the New England Journal of Medicine (NEJM). *See* Exhibit 12.

95.    On information and belief, Fuster was the lead author of the NEJM article. The NEJM article stated that Fuster can be contacted at vfuster@cnic.es or at Centro Nacional de Investigaciones Cardiovasculares, Melchor Fernández Almagro 3, Madrid 28029, Spain. *See* Exhibit 12.

96.    In the August 26, 2022, NEJM article Defendants Mt. Sinai and Fuster and Castellano JM, Pocock SJ, Bhatt DL, et al. re-published supplementary material including the 2016 SECURE Protocol. This trial protocol has been provided by the authors to give readers additional information about the work. *See* Exhibit 15.

97.    On information and belief, the SECURE protocol published on August 26, 2022, in the NEJM, was the SECURE protocol published in 2015 by Defendant

Fuster that contained statistically impossible and counterfeit MMAS-8 scoring and adherence coding criteria. *See* Exhibit 15.

| Adherence | Score |
|---|---|
| High adherence | 0 |
| Medium adherence | 1-2 |
| Low adherence | 3-8 |

*Each response carries a score: yes=0 and no=1, except for the last question: never=1, almost never, sometimes, often, always=0.*

98.    On information and belief, in the August 2022 NEJM SECURE Study protocol, Defendants Mt. Sinai and Fuster altered the construct validity of the MMAS-8 by changing the MMAS-8 coding adherence of low adherence <6, moderate adherence 6<8 and high adherence 8 to low adherence 3-8, moderate adherence 1-2, and high adherence 0. *See* Exhibit 15.

99.    On information and belief, Defendant Fuster's use of an invalid MMAS-8 scoring and coding criteria in the August 2022 NEJM SECURE study protocol was a breach of the CNIC retroactive Morisky Widget License. *See* Exhibit 13.

100.    On information and belief, Defendant Fuster breached the CNIC retroactive Morisky Widget license because Defendant Fuster refused to re-score and re-code SECURE study MMAS-8 tests. *See* Exhibit 13.

101.    On information and belief, Defendants Mt. Sinai and Fuster modified MMAS-8 scoring and coding criteria into an unauthorized Derivative MMAS-8 the infringed on the Morisky Widget copyright.

102.    On information and belief, in the in the August 2022 NEJM SECURE study protocol, Defendants Mt. Sinai and Fuster divulged and misappropriated trade secret MMAS-8 scoring ***Each response carries a score: yes=0 and no=1, except for the last question: never=1, almost never, sometimes, often, always=0***. *See* Exhibit 15.

103. On information and belief, the MMAS-8 scoring and coding criteria published by Defendants Mt. Sinai and in the SECURE Study Protocol was incorrect, which would have invalidated the SECURE patients MMAS-8 results and moreover, risked misdiagnosing the medication adherence of seriously ill patients. Such a misdiagnosis could lead to improper medical treatment, putting patients at risk of adverse medical events or even death. *See* Exhibit 15.

104. On information and belief, Defendants Mt. Sinai and Fuster use of an invalid MMAS-8 scoring and coding adherence criteria could have directly impacted the SECURE study conclusions about death rates and adverse event rates and must be reexamined and corrected in the medical literature.

105. On information and belief, in the August 26, 2022, NEJM, Defendants Mt. Sinai and Fuster claimed that the invalid MMAS-8 tests they administered to SECURE patients demonstrated that a polypill strategy led to better adherence must be reexamined and corrected in the medical literature.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT

**(As to Defendant NYU, Pfizer, Valentín Fuster)**

106. MMAS Research realleges each allegation contained in the preceding paragraphs.

107. This claim for relief for breach of contract is established by the prima facie elements of (1) existence of a valid contractual obligation, (2) performance by the plaintiff, (3) breach by the defendant, and (4) resulting damages to plaintiff.

108. A valid contractual obligation was established by the execution of the perpetual Morisky Widget license agreements between Defendants NYU, Pfizer and Valentín Fuster. Plaintiff MMAS Research LLC permitted use of the Morisky

Widget MMAS assessments under specific conditions. These agreements constitute binding contracts under applicable law.

109. Defendant NYU breached its Morisky Widget license by not scoring and coding PALLAS study MMAS-4 tests through the Morisky Widget.

110. A valid contractual obligation was established by the execution of a perpetual Morisky Widget license agreement between Defendant Pfizer and Plaintiff MMAS Research LLC, which permitted use of the Morisky Widget MMAS assessments under specific conditions.

111. Defendant Pfizer breached its Morisky Widget license by allowing the MMAS-4 to be administered in the PALLAS study by paper, after agreeing in Pfizer's license that the MMAS assessments can only be administered through the Morisky Widget. No manual administration of the MMAS Scale with paper and pencil questionnaires will be allowed for studies that begin after the execution of this license.

112. Defendant Pfizer breached its Morisky Widget license by divulging trade secret MMAS-4 criteria in the March 2025 PALLAS study article without written permission from Plaintiff.  Pfizer agreed to treat the coding and scoring criteria as confidential trade secrets, as if such information were Pfizer's own confidential trade secrets.

113. A valid contractual obligation was established by the execution of a perpetual Morisky Widget license agreement between Defendant Fuster's employer CNIC and Plaintiff MMAS Research LLC which permitted use of the Morisky Widget MMAS-8 assessment under specific conditions.

114. Defendant Fuster breached the CNIC Morisky Widget retroactive license by scoring and coding SECURE MMAS-8 test outside the Morisky Widget.

115. Defendant Fuster breached the CNIC Morisky Widget retroactive license by publicizing trade secret MMAS-8 coding and scoring criteria in the 2019

24

ClinicalTrials.gov SECURE protocol and the August 2022 NEJM SECURE protocol without the expressed, written consent from Plaintiff.

<u>**SECOND CLAIM FOR RELIEF**</u>

**COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. §§ 101, *ET SEQ.***

**(As to Defendants NYU, Pfizer, Mt. Sinai, Fuster)**

116. MMAS Research realleges each allegation contained in the preceding paragraphs.

117. At all times relevant hereto, MMAS Research was the owner of all copyright rights or rights to assert copyright claims for the Morisky Widget MMAS-4 and MMAS-8.

118. MMAS Research has complied in all respects with the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, and all other laws governing copyright.

119. By reason of the copyright infringements described below, Plaintiff is entitled to recover from Defendants statutory damages up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement, plus attorneys' fees.

120. Defendants NYU, Pfizer, Mt. Sinai, and Fuster willfully violated 17 U.S.C. §501, *et seq.*

121. MMAS Research is informed and believes and thereon alleges that Defendant Pfizer without authorization infringed the Morisky Widget copyright by exploiting the MMAS-4 in the PALLAS Study

122. The MMAS Research LLC granted Pfizer a limited-use license to use the copyrighted MMAS-4 solely if they were scored and coded in the Morisky Widget by clinicians who were trained and certified on the Morisky Widget.

123. Pfizer reported the scoring and coding of thousands of an unauthorized MMAS-4 derivative in the March 2025 PALLAS study article that were never scored and coded in the Morisky Widget.

124.   MMAS Research is informed and believes and thereon alleges that NYU without authorization infringed the Morisky Widget copyright by exploiting the Morisky Widget MMAS-4 in the PALLAS Study

125.   Defendant NYU willfully committed multiple infringements of the Morisky Widget copyright in the PALLAS Study.

126.   Defendant NYU administered an unauthorized derivative MMAS-4 tests to PALLAS Study patients in NYU clinics or hospitals and reported the results in the March 2025 PALLAS Study article.

127.   Plaintiff alleges Defendants NYU and Pfizer willfully committed no less than 9,000 infringements of the MMAS-4 in the PALLAS study.

128.   MMAS Research is informed and believes and thereon alleges that Defendant Fuster without authorization infringed the Morisky Widget copyright by exploiting the MMAS-8 in the SECURE Study.

129.   Defendant Fuster willfully committed multiple infringements of the Morisky Widget copyright in the SECURE Study.

130.   Plaintiff alleges Defendant Fuster willfully committed no less than 4500 infringements of the Morisky Widget MMAS-8 in the SECURE study.

131.   MMAS Research is informed and believes and thereon alleges that Defendant Mount Sinai without authorization infringed the Morisky Widget copyright by exploiting the MMAS-8 in the SECURE Study article and protocol in the August 2022 NEJM.

132.   Plaintiff alleges Defendant Mt Sinai willfully committed no less than 4500 infringements of the Morisky Widget MMAS-8 in the SECURE Study article and protocol in the August 2022 NEJM.

133.   By reason of the copyright infringements described above, Plaintiff is entitled to recover from Defendants statutory damages up to $150,000.00 per

26

copyright infringed for Defendants' willful copyright infringement, plus attorneys' fees.

**THIRD CLAIM FOR RELIEF**

**TRADE SECRET MISAPPROPRIATION, DTSA**

**(As To Defendants Pfizer, Mount Sinai, NYU, Fuster)**

134. MMAS Research realleges each allegation contained in the preceding paragraphs.

135. Plaintiff MMAS Research possesses and vigorously asserts trade secret rights in the MMAS Research Widget Code, including its proprietary MMAS-8 and MMAS-4 scoring and adherence coding criteria. These trade secrets are highly valuable intellectual property assets, representing years of research and development. They are not generally known to others in the industry and provide MMAS Research with a significant competitive advantage. MMAS Research has consistently implemented robust measures to maintain the secrecy of this information, including but not limited to strict confidentiality agreements, limited access protocols, and secure storage systems.

136. Under the Unified Trade Secrets Act, the Defend Trade Secret Act and New York Common Law, Plaintiff has lawful possession of the Morisky Widget, MMAS-8 and MMAS-4 trade secrets.

137. Plaintiff has standing to sue Defendants Pfizer, Mt Sinai, NYU, and Fuster for divulging and misappropriation of the MMAS-8 and MMAS-4 trade secrets.

138. Under the Defend Trade Secrets Act 18 U.S.C. § 1839(3), a trade secret consists of three elements: (1) information; (2) that is valuable because it is unknown to others; and (3) that the owner has attempted to keep it a secret.

139. The trade secrets include, but are not limited to, the specific MMAS-4 and MMAS-8 scoring and adherence coding criteria of the MMAS-4 and MMAS-8.

140. Defendants Pfizer, NYU, and Fuster (CNIC) were trained and certified on the use of trade secret MMAS-4 and MMAS-8 trade secret scoring and adherence coding criteria.

141. Plaintiff does not permit licensees to disclose MMAS, scoring and coding criteria, or share trade secret MMAS scoring and coding criteria. Yet, Defendants Pfizer, NYU, and Fuster divulged and misappropriated trade secret MMAS-4 and MMAS-8 scoring and adherence coding criteria and shared it with third parties and with anyone who had access to the internet.

142. Under the Defend Trade Secrets Act, a plaintiff must prove: (1) that the plaintiff possessed a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff. *Medidata Sols., Inc., v. Veeva Sys. Inc., 2018 WL 6173349 (S.D.N.Y. Nov. 26, 2018);*

143. In their Morisky Widget Licenses, Defendants Pfizer, NYU, and Fuster (CNIC) agreed not to use the MMAS-4 and MMAS-8 for any unauthorized use.

144. Defendants NYU, Pfizer, Fuster and Mt. Sinai misappropriated Plaintiff's confidential, proprietary, and trade secret MMAS-4 and MMAS-8 scoring and adherence coding criteria.

145. This misappropriation of MMAS Research's confidential, proprietary, and trade secret information was intentional, knowing, willful, and malicious.

146. As the direct and proximate result of Defendants' misconduct, MMAS Research has suffered and, if Defendants' conduct is not enjoined, will continue to suffer severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because MMAS Research's remedy at law is inadequate, MMAS Research seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and to protect other legitimate business interests.

147.    Plaintiff MMAS Research has been damaged by the foregoing and is entitled to an award of exemplary damages and attorney's fees.

148.    MMAS Research seeks all remedies available under the Defend Trade Secrets Act, including but not limited to monetary damages, exemplary damages for willful and malicious misappropriation, and an injunction against further misappropriation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court Enters Judgment in Plaintiff's favor and against Defendants as follows:

A.    For actual damages in an amount according to proof at trial, and for any additional profits attributable to infringements of Plaintiff MMAS Research's Copyright in the Morisky Widget, in accordance with proof at trial;

B.    For statutory damages for copyright infringement and/or willful copyright infringement by Defendants.

C.    For issuance of preliminary and permanent injunctive relief against Defendants, and each of them, and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining and restraining them from: using the MMAS-8 or the MMAS-4 copyrighted work until a license is obtained, including the maintenance on websites, posted on the Internet, or in any publication, articles, and reports described herein, or any such articles, publication, and reports in the future that use or reference the MMAS-4, MMAS-8, or the Morisky Widget;

D.    Order that Defendants file with this Court, and serve upon Plaintiff within thirty (30) days after service on Defendants of an injunction in this action, a report by Defendants, under oath, setting forth that Defendants have complied with the injunction, as well as the steps they have taken to comply;

E.    For costs of suit incurred;

29

F.     For attorneys' fees;

G.     For prejudgment interest in the amount of ten percent (10%) per annum or the maximum amount allowed by law; and

H.     For such other and further relief, the Court deems just and proper.

Dated: October 28, 2025          Respectfully submitted,

**HANKIN PATENT LAW, APC**
*/Alice Denenberg/*
Alice Denenberg, Alice@HPL.Law
Marc E. Hankin, Marc@HPL.Law
11414 Thurston Circle
Los Angeles, CA 90049
Tel: (310) 979-3600
Attorneys for Plaintiff,
**MMAS RESEARCH LLC**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all claims and issues so triable.

Dated: October 28, 2025          Respectfully submitted,

**HANKIN PATENT LAW, APC**
*/Alice Denenberg/*
Alice Denenberg, Alice@HPL.Law
Marc E. Hankin, Marc@HPL.Law
11414 Thurston Circle
Los Angeles, CA 90049
Tel: (310) 979-3600
Attorneys for Plaintiff,
**MMAS RESEARCH LLC**