**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MMAS RESEARCH LLC, a Washington limited liability company,

Plaintiff,

v.

NEW YORK UNIVERSITY; PFIZER INC.; ICAHN SCHOOL OF MEDICINE AT MOUNT SINAI; DOES 1 through 10, inclusive,

Defendants

Civ. Action No. 1:25-cv-07026-LJL

**MEMORANDUM OF LAW IN SUPPORT OF PFIZER INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, FOR A STAY PENDING RESOLUTION OF EARLIER PENDING PROCEEDING**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ... 1

STATEMENT OF FACTS ... 2

A. Plaintiff, the MMAS Tests, and Morisky Widget ... 2

B. The PALLAS Study and the Allegations As to Pfizer ... 4

C. Allegations Relating to the Trade Secret Claim ... 6

D. The Prior-Pending Morisky v. MMAS Research Lawsuit Challenging Plaintiffs' Ownership of the Alleged Rights Asserted Here ... 7

ARGUMENT ... 8

I. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF. ... 8

A. Plaintiff Fails to State a Claim for Breach of Contract ... 8

1. The complaint fails to allege any contract between Plaintiff and Pfizer Inc., the Pfizer entity named in this lawsuit ... 8

2. The complaint fails to plausibly allege any contract between Plaintiff and non-party Pfizer SAS ... 9

3. Even assuming there was a binding agreement and that Pfizer Inc. somehow was bound by it, there is no allegation that Pfizer engaged in any conduct in breach of that agreement. ... 11

B. The complaint fails to allege copyright infringement by Pfizer ... 12

1. Plaintiff alleges ownership of copyright in a derivative work (the Morisky Widget computer program) but does not own the copyright in the pre-existing MMAS-4 and MMAS-8 tests. ... 13

2. The Complaint does not allege any infringing act with respect to the Morisky Widget computer program. ... 15

3. Even assuming Plaintiff owned any copyright in the underlying MMAS tests, and that such copyright was enforceable, the complaint does not plausibly allege Pfizer engaged in any infringing acts at all ... 17

C. The complaint fails to plausibly allege trade secret infringement as to Pfizer ... 18

D. Leave to Amend Would be Futile. ... 22

II. IN THE ALTERNATIVE, THIS CASE SHOULD BE STAYED PENDING RESOLUTION OF THE MORISKY LAWSUIT. ... 22

CONCLUSION ... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adherence v. CVS Pharmacy, Inc.*,
No. 2:24-cv-1590 JCM (NJK), 2025 WL 1798883 (D. Nev. June 25, 2025)............ 4, 15, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................... 2, 8, 18

*Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co.*,
145 F.4th 257 (2d Cir. 2025)............................................................................ 14

*Austin v. Town of Farmington*,
826 F.3d 622 (2d Cir. 2016).............................................................................. 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................... 8, 18

*Broker Genius, Inc. v. Zalta*,
280 F. Supp. 3d 495 (S.D.N.Y. 2017)................................................................ 19

*Brought to Life Music, Inc. v. MCA Records, Inc.*,
No. 02 CIV.1164(RWS), 2003 WL 296561 (S.D.N.Y. Feb. 11, 2003)............................ 18

*Castillo v. Taco Bell of Am., LLC*,
960 F. Supp. 2d 401 (E.D.N.Y. 2013)................................................................ 24

*Citizens United v. Schneiderman*,
882 F.3d 374 (2d Cir. 2018).............................................................................. 9

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000)............................................................................... 22

*Democratic Nat'l Comm. v. Russian Fed'n*,
392 F. Supp. 3d 410 (S.D.N.Y. 2019)................................................................ 18

*Diatek Licensing LLC v. Estrella Media, Inc.*,
22-cv-3508 (LJL), 2022 WL 5108090 ........................................................... 23, 24

*Dominguez v. Banana Republic, LLC*,
613 F. Supp. 3d 759 (S.D.N.Y. 2020).................................................................. 9

*Elsevier Inc. v. Doctor Evidence, LLC*,
No. 17-cv-5540 (KBF), 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018)............................ 19

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009) ... 18

*Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ... 12

*Ferdman v. CBS Interactive Inc.*,
342 F. Supp. 3d 515 (S.D.N.Y. 2018) ... 14

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
586 U.S. 296 (2019) ... 12, 24

*Franklin Elec. Publishers v. Unisonic Prod. Corp.*,
763 F. Supp. 1 (S.D.N.Y. 1991) ... 13

*FXRobott LLC v. Noetiq Rsch. Inc.*,
No. 25-cv-2264 (LJL), 2025 WL 1874888 (S.D.N.Y. July 8, 2025) ... 21

*Gayle v. Larko*,
No. 18 Civ. 3773 (ER), 2019 WL 4450551 (S.D.N.Y. 2019) ... 13

*Golub Cap. LLC v. NB Alt. Advisers LLC*,
2022 No. 21-cv-3991 (LJL), 2022 WL 540653 (S.D.N.Y. Feb. 22, 2022) ... 18

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
590 F. Supp. 2d 625 (S.D.N.Y. 2008) ... 4

*Harsco Corp. v. Segui*,
91 F.3d 337 (2d Cir. 1996) ... 8

*Jiajia Luo v. Sogou, Inc.*,
465 F. Supp.3d 393 (LJL) (S.D.N.Y. 2020) ... 8

*John Wiley & Sons, Inc. v. DRK Photo*,
882 F.3d 394 (2d Cir. 2018) ... 12

*Jordan Panel Sys. Corp. v. Turner Constr. Co.*,
45 A.D.3d 165 (1st Dep't 2007) ... 10

*Kelly v. L.L. Cool J.*,
145 F.R.D. 32 (S.D.N.Y. 1992) ... 13

*Kelly v. L.L. Cool J*,
23 F.3d 398 (2d Cir. 1994) ... 13

*Kim v. Kimm*,
884 F.3d 98 (2d Cir. 2018) ... 22

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991) .......... 16

*L-7 Designs Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011) .......... 11

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .......... 23

*MBIA Ins. Corp. v. Royal Bank of Canada*,
706 F. Supp. 2d 380 (S.D.N.Y. 2009) .......... 8

*MMAS Rsch LLC v. The Charité*,
No. 21-1406-MWF (JPR), 2023 WL 2379214 (C.D. Cal. Feb. 28, 2023) .......... 18

*MMAS Rsch. LLC v. Children's Hosp. Corp.*,
No. 24-cv-12108-DJC (D. Mass. Aug. 12, 2025) .......... 20

*MMAS Rsch, LLC v. Morisky, et al.*,
No. 2:21-cv-00844-TSZ, Dkt. Nos. 290–92 (W.D. Wash.) .......... 7

*Palmer Kane LLC v. Scholastic Corp.*,
No. 12-cv-3890, 2013 WL 709276 (S.D.N.Y. Feb. 27, 2013) .......... 18

*Regions Bank v. Wieder & Mastroianni, P.C.*,
170 F. Supp. 2d 436 (S.D.N.Y. 2001) .......... 24

*Sapir v. Rosen*,
No. 20-cv-6191 (RA), 2021 WL 4482277 (S.D.N.Y. Sept. 30, 2021) .......... 19

*Scheck v. Francis*,
26 N.Y.2d 466 (1970) .......... 10

*Spinelli v. Nat'l Football League*,
903 F.3d 185 (2d Cir. 2018) .......... 12

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008) .......... 21

*Stewart v. Abend*,
495 U.S. 207 (1990) .......... 14

*Town & Cnty Linen Corp. v. Ingenious Designs LLC*,
556 F. Supp. 3d 222 .......... 19

*UrthTech LLC v. GOJO Indus., Inc.*,
No. 22-cv-6727 (PKC), 2023 WL 4640995 (S.D.N.Y. July 20, 2023) .......... 21

*Yurman Design, Inc. v. PAJ, Inc.*,
262 F.3d 101 (2d Cir. 2001) ........ 12

**Statutes**

17 U.S.C. § 101 ........ 13

17 U.S.C. § 102(a) ........ 13

17 U.S.C. § 103(b) ........ 14

17 U.S.C. § 106 ........ 12, 17

18 U.S.C. § 1839(6) ........ 19

**Other Authorities**

Fed. R. Civ. P. 8(a) ........ 13

Fed. R. Civ. P. 12(b)(6) ........ 1, 20

Fed. R. Civ. P. 19(a)(1)(B) ........ 24

## PRELIMINARY STATEMENT

Defendant Pfizer Inc. ("Pfizer") submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the First Amended Complaint ("Amended Complaint" or "Am. Compl.") as against Pfizer for failure to state a claim for relief.

The Amended Complaint filed by MMAS Research LLC ("MMAS Research" or "Plaintiff") asserts three claims against Pfizer: Breach of contract (First Claim), copyright infringement (Second Claim), and trade secret misappropriation under the federal Defend Trade Secrets Act and New York law (Third Claim). The Complaint fails to plausibly allege any of these claims, and should be dismissed for multiple independent reasons.

First, with respect to the contract claim, the complaint does not identify any contract with Pfizer Inc., the defendant in this action. Instead, the Amended Complaint alleges that there was a draft "Morisky Widget license" between two entities that are not parties, Pfizer SAS in France and MMAS Research France, and that this draft agreement – "on information and belief" – was partially executed; by whom, the complaint does not say. Plaintiff does not even supply a copy of the partially executed agreement, nor allege that Pfizer SAS in France executed it. The Amended Complaint nowhere explains how Pfizer Inc. is bound by the terms of an allegedly "partially executed" written agreement, in the draft of which it was not even named. Indeed, it does not even plausibly allege that Pfizer SAS could be bound, given that (a) there is no allegation that the agreement was fully executed; (b) despite Plaintiff's argument to apply French law, the unexecuted draft was to be governed by New York law; and (c) the correspondence with MMAS Research shows that Plaintiff's principal *rejected* the proposed license with Pfizer SAS. And, even if an agreement existed (which it does not), there is no allegation that *any* Pfizer entity conducted the PALLAS study, the act from which the claimed breach allegedly arose.

Second, on the face of the Amended Complaint and of the sole asserted copyright registration, Plaintiff owns copyright only in the computer program that it calls the "Morisky Widget" and not in the preexisting MMAS-4 and MMAS-8 tests that may be incorporated into that computer program, which the Amended Complaint explicitly concedes were pre-existing matter of which the widget was a derivative work (and which another court has held are not even protectable). *See* Dkt. No. 56. The complaint fails to allege that Pfizer copied or used or engaged in any conduct at all with respect to Plaintiff's computer program, or even that Pfizer was involved in the actual conduct of the clinical drug trials alleged in the Amended Complaint, merely alleging that a Pfizer employee contributed to an article reporting on one of those studies (the PALLAS study) in a medical journal. Indeed, the complaint fails to allege that the PALLAS study used Plaintiff's software. And, even if Plaintiff owned some copyright in the MMAS-4 and MMAS-8 tests, there is no allegation of copying or other infringing conduct by Pfizer with respect to those tests, rather than merely reporting in an article about a drug trial that used the MMAS-4.

Third, the complaint fails to plausibly allege that Plaintiff owns any trade secret that was obtained by Pfizer, much less that Pfizer engaged in any conduct that could constitute misappropriation of any alleged secret. Separately, the public record is clear that Plaintiff has publicly disclosed the alleged trade secrets on multiple occasions.

## STATEMENT OF FACTS[1]

### A. Plaintiff, the MMAS Tests, and Morisky Widget

MMAS Research is a company that provides medication software. Am. Compl. ¶ 1.

[1] The Statement of Facts is based on the well-pleaded allegations of the Amended Complaint, which, to the extent that they are not conclusory and are supported by "plausible" factual content, are deemed true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where indicated, the Statement of Facts also includes matter of which the Court can take judicial notice, such as official public records and documents central to Plaintiff's claims.

MMAS Research owners U.S. Copyright Registration TX 8-816-517 ("the '517 Registration"), for what it calls the "widget." *Id.* ¶ 5. "The MMAS Research Widget Code is a diagnostic assessment computer program designed to measure and identify medication taking behaviors." *Id.* ¶ 1. The '517 Registration, entitled "MMAS Research Widget Code," states on its face that the "new material" covered by the copyright claim is a "computer program." Llewellyn Decl. Ex. K, at 2.[2] The '517 Registration is the only registration that asserted in the Amended Complaint.

The Amended Complaint alleges that the Morisky Widget is a "derivative" work of two other "original works" created by Donald Morisky, the "Morisky Medication Adherence Scales, MMAS-8 and the MMAS-4," and that the Morisky Widget "incorporates the MMAS-4 and the MMAS-8 Adherence Scales." Am. Compl. ¶¶ 1, 20–21. Notably, the '517 Registration refers to "Previous Registrations" for the MMAS-4 and MMAS-8 under the "limitation of copyright claim" section, thereby expressly excluding the MMAS-4 and MMAS-8 as pre-existing works. In particular, the '517 Registration refers to previous registrations No. TX-8-285-390 and No. TX-8-632-533 (copies of which are attached as Exhibit F and Exhibit G to the Declaration of Paul C. Llewellyn ("Llewellyn Decl.")), which are registrations issued to Dr. Donald Morisky covering, respectively, "Morisky Medication Adherence Scale (4-item)" and "Morisky Medication Adherence Scale (8-item)," *i.e.* the MMAS-4 and MMAS-8 tests. Although the Amended Complaint alleges in conclusory terms that MMAS Research owns all copyright rights in the MMAS-4 and MMAS-8 tests, it does not assert or even mention the registrations for those tests,

[2] For this "new material" section, the Copyright Office instructs copyright applicants to "describe all new copyrightable authorship covered by the copyright claim for which registration is sought." *See* United States Copyright Office Circular 14, Copyright in Derivative Works and Compilations 3(https://www.copyright.gov/circs/circ14.pdf).

which, as noted above, are owned by another entity.[3] Am. Compl. ¶ 117.

**B. The PALLAS Study and the Allegations As to Pfizer**

The Amended Complaint refers to a "PALLAS" study and a "SECURE" study, which were clinical drug studies. *See* Am. Compl. ¶¶ 39–40; ¶¶ 56–67; ¶¶ 71–105. The Amended Complaint does not make any allegations at all about Pfizer relating to the SECURE study, and, accordingly, allegations regarding that study (which appear to be misjoined with the claims against Pfizer) are immaterial with respect to claims against Pfizer.

The Amended Complaint does not allege that the PALLAS study or Pfizer used the Morisky Widget computer software. Indeed, the PALLAS study article (E. Shinn et al., *Impact of adding palbociclib ...,"* 211 Breast Cancer Res. & Treat. 385 (2025), attached as Am. Compl. Ex. 11) ("the PALLAS Study Article") – which is central to Plaintiff's claims, and thus amenable to judicial notice[4] – does not refer at all to the "widget" or any software program relating to the MMAS tests. Rather, both the complaint and the article say the PALLAS study used "paper questionnaires" to assess medication adherence. Am. Compl. ¶ 59 and Ex. 11 at 3.

The Amended Complaint also does not allege that Pfizer participated in *conducting* the PALLAS study or in reproducing or distributing copies of the MMAS-4 test in connection with that study. In particular, there is no allegation that Pfizer enrolled patients, ran trial sites, operated the PALLAS study infrastructure, performed patient interventions, or otherwise conducted the

[3] Notably, as Plaintiff concedes (*see* Dkt. No. 56), another court recently held that the MMAS-4 and MMAS-8 tests (the registrations for which are now owned by Dr. Morisky's company Morisky Medication Adherence Research, LLC d/b/a Adherence) are not copyrightable, on the ground that they constitute unprotectable blank forms. *See Adherence v. CVS Pharmacy, Inc.*, No. 2:24-cv-1590 JCM (NJK), 2025 WL 1798883 (D. Nev. June 25, 2025) (dismissing copyright infringement claim).

[4] The Court can take judicial notice of materials alleged in the complaint to be infringing, deeming them "incorporated by reference." *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 630 (S.D.N.Y. 2008).

PALLAS study, or that it administered, copied, distributed or had any contact with any MMAS-4 or MMAS-8 tests.

The Amended Complaint alleges that the PALLAS study somehow misused the MMAS-4 Adherence Scale, such as by "alter[ing] the construct validity of the MMAS-4 by changing the MMAS-4 scoring and coding criteria of four question [sic] with scores of 0,1 (low adherence) 2,3 (moderate adherence), 4 (high adherence) to summing the five questions to create a total Morisky composite score, ranging from 0 to 5, with a maximal score of 5 considered 'most adherent.'" Am. Compl. ¶ 65. The Amended Complaint does not, however, allege that *Pfizer* administered or reproduced or distributed any copies of any such test. Rather, it alleges that Pfizer "reported the scoring and coding" of "an unauthorized MMAS-4 derivative" because, "[o]n information and belief, in March 2025, author Ernest Law from Defendants [sic] Pfizer and author Yelena Novik from Defendant NYU published [the PALLAS Study Article] in March 2025.'" *Id*. ¶¶ 57, 123. The Amended Complaint further purported to allege, also on information and belief, that in the PALLAS Study Article, Defendants Pfizer and NYU wrote "they modified the Morisky Medication Adherence Scale 4 (MMAS-4) by adding a fifth question, '*All things considered, did you actually take your* (Palbociclib/ Anti-hormone pill) *exactly as directed by your doctor?*'" *Id.* ¶ 62. In fact, nowhere does the article state that the article's *authors* modified the MMAS-4 test, rather than describe that the study used a modified version of the MMAS-4. The complaint thereby appears to conflate the PALLAS *study* with the *article* reporting on the PALLAS study. Construed plausibly, the Amended Complaint merely alleges that a Pfizer employee contributed to a medical journal article that *reported on* what the PALLAS study did concerning the MMAS-4 test (but

does not allege that the article even mentioned the Morisky Widget at all).[5]

Despite the foregoing lack of any specific allegations as to Pfizer, the Amended Complaint alleges, in conclusory fashion, that "MMAS Research is informed and believes and thereon alleges that Defendant Pfizer without authorization infringed the Morisky Widget copyright by exploiting the MMAS-4 in the PALLAS Study" and that "Defendants NYU and Pfizer willfully committed no less than 9,000 infringements of the MMAS-4 in the PALLAS study." Am. Compl. ¶¶ 121, 127. As noted above, however, there are no specific allegations that Pfizer copied or used the MMAS-4 at all; and, even if there were, the Amended Complaint does not explain how using the prior existing MMAS-4 work (which, as noted above at n.3, another court recently held is not even protectable) could infringe the derivative Morisky Widget, which, as also noted above, is not even alleged to have been used in the PALLAS Study.

### C. Allegations Relating to the Trade Secret Claim

Plaintiff's allegations with respect to its trade secret claim focus on alleged trade secrets in the MMAS Research Widget Code. Specifically, the Amended Complaint alleges at ¶ 135:

> Plaintiff MMAS Research possesses and vigorously asserts trade secret rights in the MMAS Research Widget Code, including its proprietary MMAS-8 and MMAS-4 scoring and adherence coding criteria. These trade secrets are highly valuable intellectual property assets, representing years of research and development. They are not generally known to others in the industry and provide MMAS Research with a significant competitive advantage. MMAS Research has consistently implemented robust measures to maintain the secrecy of this information, including but not limited to strict confidentiality agreements, limited access protocols, and secure storage systems.

Beyond that, the Amended Complaint summarily alleges, "Defendants NYU, Pfizer, and Mt. Sinai misappropriated Plaintiff's confidential, proprietary, and trade secret MMAS-4 and MMAS-8

[5] The Complaint also refers to a study called "RENACALL" that Pfizer purportedly was involved in, but makes no specific claims with respect to that study. *See* Compl. ¶ 29.

scoring and adherence coding criteria." *Id.* ¶ 144. The complaint does not allege any specific actions that Pfizer took to purportedly gain or misappropriate any trade secrets of Plaintiff.

### D. The Prior-Pending Morisky v. MMAS Research Lawsuit Challenging Plaintiffs' Ownership of the Alleged Rights Asserted Here

MMAS Research and its owner Steven Trubow are defendants in a lawsuit pending in the United States District Court for the Western District of Washington (the "Morisky Lawsuit"), brought by Dr. Donald Morisky, the creator of the MMAS-4 and MMAS-8 tests.[6] *See* Am. Compl. ¶ 20. In that lawsuit, Dr. Morisky alleges, *inter alia*, that as a result of an agreement between himself and MMAS Research, Dr. Morisky (and now his company Adherent) is the exclusive owner of the Morisky Widget, the MMAS-4 test and the MMAS-8 test, the scoring protocol for those tests, and all other intellectual property related thereto, and that MMAS Research has assigned to Dr. Morisky and/or Adherence the licenses that MMAS Research and its affiliate entities had entered into with respect to the Morisky Widget (which would include the alleged license asserted against Pfizer here). *See, e.g.*, Llewellyn Decl. Ex. A, at ¶¶ 74(a-h), 97–100. Dr. Morisky further alleges that MMAS Research's continued assertion of rights in the Morisky Widget is a violation of the parties' agreement. *Id.* ¶ 79(a-c). Among other relief, Dr. Morisky seeks an order declaring him the sole and exclusive owner of the Morisky Widget copyright and all other IP related to the MMAS-4 and MMAS-8 tests, as well as the "Morisky Widget License Agreements with all third-party licensees of the Morisky Lawsuit." *Id.*, Prayer for Relief, at G. Initially scheduled for trial in November 2025, the Morisky Lawsuit is now set for trial on March 2, 2026, less than three months away. *See* Llewellyn Decl. Ex. B.

---

[6] Dr. Morisky has filed a motion in the Morisky Lawsuit to join as an additional plaintiff his company, Morisky Medication Adherence Research, LLC ("Adherence"), on the ground that Adherence has been assigned Dr. Morisky's rights in the relevant intellectual property. *See MMAS Rsch, LLC v. Morisky, et al.*, No. 2:21-cv-00844-TSZ, Dkt. Nos. 290–92 (W.D. Wash.).

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF.

For purposes of this motion, the Court should take the well-pleaded facts alleged in the complaint as true. *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016). However, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp.3d 393, 405 (LJL) (S.D.N.Y. 2020) (granting motion to dismiss) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint needs more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Id.* (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

#### A. Plaintiff Fails to State a Claim for Breach of Contract

Plaintiff's First Claim for Relief should be dismissed because the Amended Complaint does not plausibly allege that (i) Pfizer Inc. was a party to any Morisky Widget license; (ii) any contract was formed even with non-party Pfizer SAS; or (iii) Plaintiff itself ever assented to the agreement that it alleges was formed. What is more, the conduct alleged to be in breach of the purported agreement – using the MMAS-4 test in the PALLAS study and divulging purported trade secrets relating to the MMAS-4 – are not acts that Pfizer is alleged to have engaged in.

##### 1. The complaint fails to allege any contract between Plaintiff and Pfizer Inc., the Pfizer entity named in this lawsuit.

To state a breach of contract claim under New York law, one must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Generally, "a party who is not a signatory to a contract cannot be held liable for breaches of that contract." *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009).

The "Pfizer" defendant in this action is Pfizer Inc., a Delaware corporation. Am. Compl. ¶ 7. Nowhere does Plaintiff plausibly allege that Pfizer Inc. was a party to the so-called widget license alleged in the Amended Complaint. Rather, Plaintiff alleges that a license was entered into by "Pfizer, a simplified joint-stock company incorporated under French law (SAS)." *Id.* ¶ 49; *see also* Am. Compl. Ex. 9, at 1. The pleading contains no allegation that Pfizer Inc. executed that agreement, assumed it, or is otherwise bound by it. What is more, on the face of the complaint, the alleged contract was not entered into with Plaintiff, but with "SAS MMAS Research France," Am. Compl. ¶ 49, which also is not a party to this action. Thus, neither party to the alleged contract is before the Court. For the above reasons alone, the breach of contract claim fails.

**2. The complaint fails to plausibly allege any contract between Plaintiff and non-party Pfizer SAS.**

In addition to the purported contract involving none of the parties to this case, the Amended Complaint also fails to allege facts showing that any contract was formed with non-party Pfizer SAS, for several independent reasons.

First, Plaintiff's allegation that Pfizer SAS "entered into an agreement" is purely conclusory, alleging only that "[o]n information and belief," Pfizer SAS entered into a Morisky Widget license with "SAS MMAS Research France" (which also is not a party here), by vaguely alleging that someone – it is not even clear which entity – "partially executed a worldwide retroactive and perpetual Morisky Widget license." Am. Compl. ¶ 49. Plaintiff does not even offer a copy of the document as allegedly partially executed, and, in all events, conclusions pleaded "on information and belief" cannot substitute for factual allegations supporting contract formation. *See Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) ("[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory") (citations omitted); *see also Dominguez v. Banana Republic, LLC*, 613 F. Supp. 3d

759, 774 (S.D.N.Y. 2020) (granting 12(b)(6) motion).

Second, the Amended Complaint does not plausibly allege that either (non-party) SAS MMAS Research France nor (non-party) Pfizer SAS signed or accepted any agreement. Instead, it vaguely alleges asserts that under French law "based on the principle of 'consensualisme'" the parties did not need to sign, Am. Compl. ¶ 50, but the unsigned agreement attached to the complaint contains a ***New York*** choice-of-law clause. Am. Compl. Ex. 9, at 5. New York Law requires objective assent, and no contract exists where the parties contemplate a writing that was never signed or accepted. "[I]f the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed." *Jordan Panel Sys. Corp. v. Turner Constr. Co.*, 45 A.D.3d 165, 166 (1st Dep't 2007) (quoting *Scheck v. Francis*, 26 N.Y.2d 466, 469-70 (1970)). In other words, where the parties expect to formalize a deal through signatures and one party never signs or otherwise accepts, there is no agreement. Here, however, Plaintiff merely alleged in conclusory terms that Pfizer SAS and MMAS Research France MMAS mutually consented to the unsigned agreement and all of its specific terms.

Third, in fact (and was previously demonstrated to Plaintiff's counsel with documentary evidence), Plaintiff's principal Mr. Steven Trubow explicitly ***rejected*** any widget license with non-party Pfizer SAS. Although the Amended Complaint attaches certain email correspondence concerning widget training with Pfizer SAS (Am. Compl. Ex. 10), and vaguely asserts that an agreement was "partially executed" on July 4, 2019 (Am. Compl. ¶ 49), the email correspondence between counsel and Mr. Trubow confirms that any proposed agreement with Pfizer SAS (or "Pfizer France") was still under negotiation at the time and was rejected by Mr. Trubow after that date. Thus, on August 22, 2019, Mr. Trubow wrote on behalf of MMAS Research and MMAS

Research France SAS, "At this time, we can offer Pfizer France a retroactive and perpetual Morisky Widget MMAS License for 5000 Euros. Pfizer France has already been trained and certified on the Morisky Widget and given a secure Widget with 3000 complimentary MMAS tests." Llewellyn Decl. Ex. C, at 1. On September 28, 2019, Mr. Trubow emailed again with a proposal regarding terms relating to the proposed widget license, stating "Can you please ask your client if they wish us to add to the settlement agreement that MMAS Research LLC warrants to Pfizer that it has the authority to enter into this retroactive and perpetual Morisky Widget MMAS licensing agreement." Llewellyn Decl. Ex. D, at 1. On November 15, 2019, counsel sent Mr. Trubow proposed terms for a Pfizer France widget license, which Mr. Trubow expressly rejected the very next day, writing "there are MANY other terms and conditions that are not acceptable to MMAS Research LLC." Llewellyn Decl. Ex. E, at 1. These emails after July 4, 2019, completely refute Plaintiff's allegations "on information and belief" that a widget license was entered into—a fact that the Court may take into account on this motion to dismiss. *See L-7 Designs Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) (where plaintiff alleged contract was formed through series of emails, it was appropriate on motion on the pleadings to examine full chain of emails to determine whether they showed mutual assent or only negotiations). Put simply, Plaintiff has not and cannot plausibly alleged a breach of contract because no contract ever existed.

**3. Even assuming there was a binding agreement and that Pfizer Inc. somehow was bound by it, there is no allegation that Pfizer engaged in any conduct in breach of that agreement.**

Finally, the breach of contract claim fails for the additional independent reason that Plaintiff fails to allege any conduct *by Pfizer* in breach of the purported agreement. The First Claim for Relief alleged the following purported breach by Pfizer:

> 111. Defendant Pfizer breached its Morisky Widget license by allowing the MMAS-4 to be administered in the PALLAS study by paper, after agreeing in Pfizer's license that the MMAS assessments can only be administered

> through the Morisky Widget. . . .
>
> 112. Defendant Pfizer breached its Morisky Widget license by divulging trade secret MMAS-4 criteria in the March 2025 PALLAS study article without written permission from Plaintiff. . . .

However, as set forth in the Statement of Facts above and in connection with The Second and Third Claims for Relief below, the Amended Complaint fails to allege that Pfizer itself engaged in any activity with respect to the actual conduct of the PALLAS study, such as running the study or distributing copies of the MMAS-4. Nor does the Amended Complaint allege how Pfizer purportedly divulged any trade secrets with respect to the "coding and scoring criteria" of the MMAS-4 test – particularly given that the complaint alleges that the PALLAS study used a modified version of the MMAS-4, and that MMAS Research has itself extensively disclosed the coding and scoring criteria of the MMAS-4 test (as discussed below, *see infra pp.* 17, 20-21).

**B. The complaint fails to allege copyright infringement by Pfizer.**

To state a claim for copyright infringement, "a plaintiff must allege both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001). Infringement means a violation by the defendant of one of the exclusive rights held by the copyright owner under 17 U.S.C. § 106. Those are the rights to "reproduce the work, prepare derivative works, distribute the work to the public, perform the work, display the work, and perform the work by means of digital transmission." *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 402 (2d Cir. 2018) (citing 17 U.S.C. § 106). Copying of constituent elements of the copyrighted work "that are original" is an element of an infringement claim. *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). A copyright registration for the allegedly infringed work is a prerequisite to suing for copyright infringement. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019).

Moreover, courts in this District have held that to meet the pleading requirements of Fed. R. Civ. P. 8(a), a complaint must allege with specificity the acts of alleged copyright infringement, including (1) which specific original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts during what time the defendant infringed the copyright. *See, e.g.*, *Gayle v. Larko*, No. 18 Civ. 3773 (ER), 2019 WL 4450551, at *3 (S.D.N.Y. 2019) (citing *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), aff'd sub nom. *Kelly v. L.L. Cool J*, 23 F.3d 398 (2d Cir. 1994) (citing *Franklin Elec. Publishers v. Unisonic Prod. Corp.*, 763 F. Supp. 1, 4 (S.D.N.Y. 1991)). For multiple reasons, Plaintiff fails to meet these requirements.

**1. Plaintiff alleges ownership of copyright in a derivative work (the Morisky Widget computer program) but does not own the copyright in the pre-existing MMAS-4 and MMAS-8 tests.**

The only copyright registration asserted here is one covering the Morisky Widget software code. *See, e.g.*, Am. Compl. ¶¶ 5, 117; Llewellyn Decl. Ex. K at 2 (referencing "computer program" as new material in work); *supra*, p. 3. Although Plaintiff attempts to conflate the Morisky Widget computer program with the MMAS-4 and MMAS-8 tests, and to suggest that Pfizer somehow infringed Plaintiff's rights by doing something with respect to the MMAS-4 or MMAS-8 tests, that claim fails as a matter of law because the Morisky Widget is a derivative work (as the complaint concedes, *see* Am. Compl. ¶¶ 20–21) and ownership of it does not give rise to copyright in any pre-existing matter (such as the MMAS-4 or MMAS-8 tests) that it might incorporate.

Under the Copyright Act, a work "based upon one or more preexisting works" is a "derivative work." 17 U.S.C. § 101. An author has a copyright in "original works of authorship," 17 U.S.C. § 102(a), including derivative works, provided that the preexisting material has not been "used unlawfully." *Id.* § 103(a). As the Court of Appeals has held, however, the author of a

derivative work *does not have any copyright in the preexisting work*: "The aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-existing work remains on grant from the owner of the pre-existing work." *Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co.*, 145 F.4th 257, 263 (2d Cir. 2025) (quoting *Stewart v. Abend*, 495 U.S. 207, 223 (1990)). Copyright in a derivative work "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b). Put more simply, ***the owner of a derivative work does not have any copyright interest in the preexisting material incorporated into that work.***

Here, the Amended Complaint alleges that MMAS Research owns the copyright to the Morisky Widget – the original material of which consists of a "computer program." Llewellyn Decl. Ex. K, at 2. *See Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 524–25 (S.D.N.Y. 2018) (copyright registration only covers matter identified in registration certificate). The Amended Complaint does *not* plausibly allege ownership of copyright to the underlying MMAS-4 or MMAS-8. To the contrary, the Amended Complaint *concedes* that the Morisky Widget is "a ***derivative*** of Morisky's original works, the . . . MMAS-8 and MMAS-4." Am. Compl. ¶¶ 20–21 (emphasis added). Presumably because Plaintiff cannot allege that Pfizer (or even that the PALLAS study) actually copied or used the Morisky Widget (more on that below), it tries to obscure this issue by alleging that the widget "incorporates" the MMAS-4 and MMAS-8 tests as part of its federal copyright registration, and that the alleged use of the MMAS-4 somehow amounts to infringement of the derivative Morisky Widget copyright. Am. Compl. ¶¶ 1–2, 121. This effort misapprehends copyright law and the scope of Plaintiff's alleged copyright registration. Plaintiff's Morisky Widget computer program registration *expressly excludes* the MMAS-4 and

MMAS-8 tests as preexisting matter, referencing Registration No. TX 8-285-390 for the "Morisky Medication Adherence Scale (4-item)" and Registration No. TX 8-623-533 for the "Morisky Medication Adherence Scale (8-item)" as preexisting matter. *See* Llewellyn Decl. Exs. F, G, K. The Amended Complaint admits that the MMAS-4 and MMAS-8 tests, "Morisky's *original* works," were created before the Morisky Widget. Am. Compl. ¶ 20 (emphasis added). As a matter of law, Plaintiff has no copyright interest in the preexisting MMAS-4 and MMAS-8 tests themselves that are incorporated into its computer program, and does not assert here a copyright registration covering those works.

What is more, even if MMAS Research somehow owned rights in the preexisting MMAS-4 or MMAS-8 tests, those works were recently held by another federal court to be *uncopyrightable,* in a ruling that Plaintiff itself has asked the Court to note (*see* Dkt. No. 56). Thus, in *Adherence v. CVS Pharmacy, Inc.*, No. 2:24-cv-1590 JCM (NJK), 2025 WL 1798883 (D. Nev. June 25, 2025), a case brought by Dr. Morisky's company, the court granted a motion to dismiss a copyright claim asserting infringement of the MMAS tests on the ground that the works are unprotectable blank forms. Even if MMAS Research plausibly alleged ownership of those works and infringement by Pfizer of those works, and even if it had pleaded a copyright registration covering the works -- which it has not – an infringement claim would fail as a matter of law.

**2. The Complaint does not allege any infringing act with respect to the Morisky Widget computer program.**

The crux of the copyright infringement claim appears to be that Pfizer purportedly infringed the Morisky Widget computer program via the PALLAS study, apparently by doing something with respect to the underlying MMAS-4 test – again, as above, conflating the software and the tests. Thus, Plaintiff alleges that Pfizer "infringed the Morisky Widget copyright by

exploiting the MMAS-4 in the PALLAS Study," and "willfully committed no less than 9,000 infringements of the MMAS-4 in the PALLAS Study." Am. Compl. ¶¶ 121, 127.

There are numerous defects with these allegations, including that they appear to alternate between asserting the Morisky Widget *computer program* copyright and alleging infringement of the MMAS-4 and MMAS-8 *tests*, which are not the same thing (as discussed above); they assert that alleged infringement of the ***original*** work (i.e. the MMAS-4 test) constitutes infringement of the ***derivative*** Morisky Widget; and they appear to allege infringement of "MMAS-4 and MMAS-8 copyrights" although Plaintiff does not plausibly allege ownership of copyright in the MMAS-4 and MMAS-8 tests or any copying or other unlawful use of those tests by Pfizer.[7]

Critically, however, the Amended Complaint does not even allege that the PALLAS study used Plaintiff's "Morisky Widget" computer program, the only work for which a copyright registration is asserted. This is not alleged because the study did ***not*** use the program (as counsel for Plaintiff has been advised). Indeed, the PALLAS Study Article expressly states that patients "were asked to complete modified MMAS-4 . . . *paper questionnaires*." *See* Am. Compl. Ex. 11, at 3 (emphasis added). There is simply no allegation that anyone associated with the PALLAS study used or copied or distributed the Morisky widget computer program.

With respect to any specific conduct by Pfizer, moreover, the Amended Complaint also is entirely lacking. The Amended Complaint does not allege that Pfizer had any role in the conduct

[7] Plaintiff's failure to provide plausible assertions appears to be part of a developing pattern as a serial litigant, who has filed at least seven copyright infringement lawsuits since June 2025. In the Morisky Lawsuit, the Court has imposed sanctions on MMAS Research, including limiting its defenses at trial and ordering an adverse jury instruction due to Plaintiff's discovery conduct. True copies of 8/20/2024 report and recommendation regarding Dr. Morisky's motion for sanctions, and the 9/10/2024 order adopting the report and recommendation, are attached as Llewellyn Decl. Exs. H and I, respectively. The Court can take judicial notice of these documents relating to another lawsuit, "to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

of the PALLAS study, or that Pfizer copied or reproduced or displayed Plaintiff's computer program at all, or even had access to Plaintiff's computer code. As explained below, it merely alleges that a Pfizer employee wrote an article reporting on the PALLAS study.

**3. Even assuming Plaintiff owned any copyright in the underlying MMAS tests, and that such copyright was enforceable, the complaint does not plausibly allege Pfizer engaged in any infringing acts at all.**

Further, even assuming that Plaintiff plausibly alleged some rights in the underlying MMAS-4 and MMAS-8 tests (and, as set forth above, it does not), and even assuming (contrary to the recent decision in *Adherence v. CVS*) that those works are protectable in copyright, there is no allegation that Pfizer copied or engaged in any other infringing acts with respect to those works.

Rather, with respect to Pfizer, the Amended Complaint alleges that "Ernest Law from Defendants Pfizer and author Yelena Novik from Defendant NYU published a PALLAS Study article in March 2025," Am. Compl. ¶ 57, and that defendants "altered the construct validity of the MMAS-4 by changing the MMAS-4 scoring and coding criteria of four question [sic] with scores of 0,1 (low adherence) 2,3 (moderate adherence), 4 (high adherence) to summing the five questions to create a total Morisky composite score, ranging from 0 to 5, with a maximal score of 5 considered 'most adherent.'" *Id.* ¶ 65. But the article itself simply reports on what the PALLAS study did (and does not state that the authors themselves altered the MMAS-4 test), and co-authoring a medical journal article that merely reports on and describes a medical study does not plausibly suggest any 17 U.S.C. § 106 acts of infringement of the MMAS-4 test. Indeed, Plaintiff appears to complain that the article referenced an additional question posed in the PALLAS study that, according to Plaintiff itself, *is not even part of the MMAS-4 test*. Am. Compl. ¶¶ 57, 62, 65. The Amended Complaint does not even allege that the article quoted any portions of the MMAS-4 test (and the article does not do so). Again, there is no specific allegation that Pfizer conducted the PALLAS study or administered any MMAS tests to patients in that study or made or distributed

copies of the MMAS-4 test. Plaintiff's threadbare allegations of infringement do not come close to meeting the pleading requirements of *Iqbal* and *Twombly*. *See Palmer Kane LLC v. Scholastic Corp.*, No. 12-cv-3890, 2013 WL 709276, at *1–3 (S.D.N.Y. Feb. 27, 2013) (dismissing copyright claim where complaint failed to "sufficiently plead the works at issue, the infringing acts, and the relevant time period."); *Brought to Life Music, Inc. v. MCA Records, Inc.*, No. 02 CIV.1164(RWS), 2003 WL 296561, at *1 (S.D.N.Y. Feb. 11, 2003) (dismissing copyright claim where complaint did not allege "by what acts during what time the defendant infringed."). And, reporting the results of a study that used plaintiff's test would not constitute an act of infringement, as at least one other court has held in dismissing a complaint of Plaintiff. *See MMAS Rsch LLC v. The Charité*, No. 21-1406-MWF (JPR), 2023 WL 2379214, at *5 (C.D. Cal. Feb. 28, 2023) (granting motion to dismiss).

### C. The complaint fails to plausibly allege trade secret infringement as to Pfizer.

"To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Golub Cap. LLC v. NB Alt. Advisers LLC*, 2022 No. 21-cv-3991 (LJL), 2022 WL 540653, at *13 (S.D.N.Y. Feb. 22, 2022) (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009); *see also Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 447 (S.D.N.Y. 2019). "Similarly, under the federal Defend Trade Secrets Act, 'a party must show 'an uncontested disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.'" *Golub Cap.*, 2022 WL 540653 at *13 (citation omitted).

As this Court has held, under the federal Defend Trade Secrets Act ("DTSA"), "'[i]mproper means' includes 'theft, bribery, misrepresentation, [and] breach or inducement of a breach of a duty to maintain secrecy,' but excludes 'reverse engineering, independent derivation, or any lawful means of acquisition.'" *Town & Cnty Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 255 (quoting 18 U.S.C. § 1839(6)). Similarly, "improper means" under New York law are "'fraudulent misrepresentations to induce disclosure, tapping of telephone wires, eavesdropping or other espionage.... In general they are means which fall below the generally accepted standards of commercial morality and reasonable conduct.'" *Id.* And, it is "axiomatic that a plaintiff cannot recover for the misappropriation of a trade secret if he revealed that secret" in published matter. *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 518 (S.D.N.Y. 2017).

"[T]o survive a motion to dismiss, a party alleging that it owns a trade secret must put forth specific allegations as to the information owned and its value." *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-cv-5540 (KBF), 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018); *see also, e.g.*, *Sapir v. Rosen,* No. 20-cv-6191 (RA), 2021 WL 4482277, at *5 (S.D.N.Y. Sept. 30, 2021) ("[D]istrict courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated.").

Here, the Amended Complaint fails to adequately allege either ownership of a protectable trade secret, or misappropriation by Pfizer. With respect to ownership of an alleged trade secret, the Amended Complaint merely asserts that Plaintiff owns trade secret rights with respect to the "MMAS Research Widget Code, including its proprietary MMAS-8 and MMAS-4 scoring and adherence coding criteria." Am. Compl. ¶ 135. That is the entire description of the alleged trade secret. Such cursory allegations fall short of the requirement of "specific allegations as to the information owned and its value." *Elsevier*, 2018 WL 557906, at *4.

Even if Plaintiff's cursory assertion of ownership of a trade secret was sufficient, there is no allegation that Pfizer obtained, used, or did anything at all with respect to the Morisky Widget computer program or with its purported "proprietary MMAS-8 and MMAS-4 scoring and adherence coding criteria." Nothing in the Amended Complaint alleges the Pfizer acquired the computer program's scoring and coding criteria at all, much less in breach of an agreement, confidential relationship or duty, or by "improper means" as that term is construed under the DTSA or New York law, nor that it used them at all. Nor is there any reference to the Morisky Widget or its source code in the PALLAS Study Article. Am. Compl. Ex. 11.

Indeed, addressing similar allegations by MMAS Research in another case, the District of Massachusetts recently dismissed Plaintiff's trade secrets claim against another defendant, Boston Children's Hospital. *See MMAS Rsch. LLC v. Children's Hosp. Corp.*, No. 24-cv-12108-DJC (D. Mass. Aug. 12, 2025). In that case, as here, MMAS Research alleged ownership of trade secrets in the Morisky Widget code, but did not allege specific misappropriation of the widget by Boston Children's Hospital. Granting a Rule 12(b)(6) motion to dismiss, the court held, "[T]he allegations. . .do not indicate that source code or other trade secrets for the Morisky Widget was disclosed or distributed by the BCH Defendants to anyone, thereby constituting misappropriation. Even reading the amended complaint in the light most favorable to MMAS, it has failed to plausibly allege misappropriation of trade secrets in violation of the DTSA." *Id*. at *7.

Lastly, to the extent that the complaint suggests trade secret rights in the scoring and coding of the MMAS-4 or MMAS-8 tests, it also fails to state a claim for relief, for three independent reasons. First, MMAS Research does not allege any actual misappropriation by Pfizer as required for a trade secret claim. There is no plausible allegation that Pfizer misappropriated any secrets regarding the scoring or coding of the underlying MMAS-4 or MMAS-8, rather than simply

reported in a medical journal article about the results of a study. Second, the complaint fails to allege how MMAS Research could even own trade secret rights in the preexisting original works of Dr. Morisky. Third, the alleged trade secret *is not secret*, including as a result of Plaintiff's own conduct. Thus, Plaintiff itself has publicly disclosed the scoring and coding of underlying at least one of the MMAS tests, the MMAS-8, in Exhibit 1 to the Complaint in this very case, and has disclosed the MMAS's scoring and coding numerous other times, as defendant Mt. Sinai has demonstrated in this case at Dkt. No. 31-1 (Decl. of Kevin J. Cammiso, Exs. Q, M, L, F, E, N, R, S, P, EE, AA). These actions by Plaintiff defeat any claim that the alleged trade secret is protectable. *See, e.g.*, *FXRobott LLC v. Noetiq Rsch. Inc.*, No. 25-cv-2264 (LJL), 2025 WL 1874888, at *14 (S.D.N.Y. July 8, 2025) (holding that materials intentionally disclosed publicly "cannot constitute trade secrets"), *see also UrthTech LLC v. GOJO Indus., Inc.*, No. 22-cv-6727 (PKC), 2023 WL 4640995, at *11 n.5 (S.D.N.Y. July 20, 2023) (holding there was no trade secret protection where plaintiff filed the alleged trade secrets as an exhibit to its first amended complaint). Dr. Morisky also explained the purported "secret" of the MMAS coding and scoring in an article published nearly two decades ago. *See* Donald E. Morisky et al., *Predictive Validity of a Medication Adherence Measure in an Outpatient Setting*, 10 J. Clinical Hypertension 348 (2008), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2562622/,[8] He apparently submitted to the U.S. Copyright Office the scoring and coding protocol for the MMAS-4 as a publicly-accessible copyright deposit, which has also been filed on public court dockets. *See, e.g.*, Llewellyn Decl. Ex. J. Plaintiff fails to allege any trade secrets in the MMAS-4 and MMAS-8, and fails to allege any misappropriation by Pfizer.

[8] Courts routinely take judicial notice of the existence of and statements within articles, even if not the truth of the matter asserted in those articles. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). Thus, the Court can properly take notice of Dr. Morisky's published article explaining the MMAS coding and scoring.

### D. Leave to Amend Would be Futile.

Leave to amend should be denied where the defect in the pleading is substantive, such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Each of Plaintiff's claims suffer from precisely that kind of substantive defect, that cannot be cured by repleading. First, the Amended Complaint alleges that the widget license was with Pfizer SA, a French entity, not Pfizer Inc., the only Pfizer entity in this case. Plaintiff cannot cure this fundamental defect through amendment. Second, the only registered copyright asserted is that for the widget software program, but the PALLAS Study is not alleged to have used the widget, and the PALLAS study article confirms that the study used paper questionnaires. Third, Plaintiff has repeatedly disclosed the alleged coding and scoring criteria that it claims are trade secrets – disclosures that preclude any plausible allegation of secrecy. Since "[i]t is well established that leave to amend a complaint need not be granted when amendment would be futile," *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018), the claims should be dismissed with prejudice.

## II. IN THE ALTERNATIVE, THIS CASE SHOULD BE STAYED PENDING RESOLUTION OF THE MORISKY LAWSUIT.

This case can and should be dismissed, with prejudice, now. However, in the interests of judicial economy and comity, Pfizer respectfully submits that a stay of this case until resolution of the Morisky Lawsuit that is scheduled for trial in March 2026 would be appropriate. A stay is proper because the outcome of the Morisky Lawsuit may render this entire case moot by confirming that Plaintiff does not own the rights that it asserts, or may narrow the issues by, for example, confirming the limited scope of Plaintiff's alleged rights in the Morisky Widget. Under these circumstances, with this case just getting underway and the Morisky Lawsuit approaching trial, it would be a waste of resources and lacking in judicial comity to allow this case to proceed.

"'[T]he power to stay proceedings is incidental to the power inherent in every court to

control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Diatek Licensing LLC v. Estrella Media, Inc.*, 22-cv-3508 (LJL), 2022 WL 5108090, at *1 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "[A] court might, in the interest of judicial economy, enter a stay pending the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed." *Id.* As this Court held in *Diatek*, "[t]he factors considered in deciding whether to grant a stay are '(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.'" *Id*.

Here, to begin with, it is plain that the Morisky Lawsuit could impact this case. As set forth above, the Morisky Lawsuit raises as core issues whether MMAS Research or Dr. Morisky (or his company Adherence) owns (1) the Morisky Widget copyright that Plaintiff asserts in this case; (2) rights in the MMAS-4 and MMAS-8 tests, which also Plaintiff appears to claim here; (3) other IP related to the MMAS-4 and MMAS-8, such as the scoring protocol that Plaintiff asserts as its purported trade secret here, and (4) the right to enforce the purported Morisky Widget license agreements that are also asserted here. These issues could be dispositive here, without even needing to reach the many other incurable defects in Plaintiff's Amended Complaint. Indeed, if Dr. Morisky prevails in the Morisky Lawsuit, that would mean that MMAS Research does not own the very rights on which claims here are premised, and would be collaterally estopped from asserting those claims here. In all events, it is clear that the outcome of the Morisky Lawsuit will clarify the respective ownership of Plaintiff and Dr. Morisky of the rights asserted here. Under these circumstances, applying the factors set forth in *Diatek,* Pfizer respectfully submits that if the

complaint is not dismissed, a stay is warranted:

*First,* Plaintiff can point to no prejudice "aside from the prejudice present in every stay that it will be delayed in prosecuting its case." *Id.* at *2. The PALLAS study is already completed and reported. The complaint does not allege any ongoing copying or other use of the asserted intellectual property.

*Second,* if this case proceeds now, defendants likely will need to engage in substantial discovery that would involve their confidential business operations and other issues, and would likely require significant document review for confidentiality and privilege concerns, as in *Diatek*. *See id*. As this Court held in *Diatek*, "to begin discovery in this case now would risk wasting time and resources on claims that [Plaintiff] may be collaterally estopped from asserting." *Id.*

*Third*, with respect to the interests of the courts, issuing a stay and allowing Judge Martinez in Seattle to first decide the disputed ownership issues between Dr. Morisky and MMAS Research would comport with the interests of comity, avoid inconsistent adjudication, and conserve judicial resources. *See Diatek*, 2022 WL 5108090, at *2 (citing *Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013) and *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 439 (S.D.N.Y. 2001)). Although Dr. Morisky is not a party here, MMAS Research is a party in both cases, and the identical issues of ownership as between Morisky and MMAS Research would be litigated in both cases; and, Dr. Morisky and Adherence likely are necessary parties in this case under Fed. R. Civ. P. 19(a)(1)(B)). And, because MMAS Research would be collaterally estopped by a determination that it is not the owner of the rights asserted here, there would be substantial efficiency in allowing those issues to be determined in that case.

*Fourth*, with respect to the interests of persons not parties to this case, it would be in the interest of Dr. Morisky, the admitted creator of the MMAS-4 and MMAS-8 tests, and Adherence,

the apparent owner of the copyright in those tests and an asserted owner of the Morisky Widget copyright and other related IP, to have the disputed ownership issues addressed in the case pending between them and MMAS Research rather than in this newly filed case where they have not even been named parties and likely would be subject to impleader or, at a minimum, third-party discovery on the same subjects being litigated in the Morisky Lawsuit.

*Fifth*, there would be no harmful impact on the public interest in a stay. To the contrary, the public interest would benefit from the efficient preservation of court resources.

In view of all of the foregoing, in the event that the Court does not dismiss this case, a stay in deference to the Morisky Lawsuit is warranted.

**CONCLUSION**

For all of the foregoing reasons, the Court should dismiss the complaint in its entirely as to Pfizer.

Dated: December 23, 2025

Respectfully submitted,

*/Paul C. Llewellyn/*

Paul C. Llewellyn
Paul.Llewellyn@arnoldporter.com
Catherine M. Langhans
Catherine.Langhans@arnoldporter.com
ARNOLD & PORTER LLP
250 West 55th Street
New York, NY 10019-9710
T: 212-836-8000
F: 212-386-8689

*Counsel for Defendant Pfizer Inc.*